IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AVT CALIFORNIA, L.P.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ARROW RECYCLING SOLUTIONS, INC.; KTK, LLC; VJW, LLC; DOUGLAS KUNNEL; PATRICIA KUNNEL; BRIAN MURRAY; A-PLUS BUSINESSES, INC. d/b/a A-PLUS CONTRACTORS; STEVE PEAKE; and DOES 1 through 10,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BRIAN MURRAY'S MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00939-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a motion to dismiss filed by defendant Brian Murray ("Murray" or "Defendant"). Murray moves the court to dismiss the claims against him because 1) this court lacks personal jurisdiction over him;  2) AVT California, L.P. ("AVT" or "Plaintiff") has failed to state a claim upon which relief can be granted; and 3) AVT has failed to name an indispensable party that cannot be named. For reasons enumerated below, the court concludes that AVT has made a prima facie showing that Murray is subject to personal jurisdiction in Utah. The court further concludes that AVT has pled facts sufficient to state claims against Murray upon which relief can be granted for fraud, negligent misrepresentation, and entering into a civil conspiracy, but not for unjust enrichment. Finally, the court concludes that AVT has not failed to name an indispensable

party. Thus, the court GRANTS Murray's motion to dismiss the unjust enrichment claim and DENIES his motion to dismiss the other claims against him.

## FACTUAL BACKGROUND[1]

This dispute is centered around a finance lease for a briquetting machine or briquetter, a machine used to recycle scrap metal. Under a finance lease, the lessee selects the asset it wishes to lease. The lessor then purchases the asset and the lessee takes possession of it while it makes payments to the lessor.

Arrow Recycling Solutions, Inc., ("Arrow") is a recycling company. At some point prior to the events giving rise to this dispute, it purchased a briquetter from a briquetter manufacturer, RUF US, Inc. ("RUF"), and financed the purchase through Opus Bank.[2] For ease of reference, the court refers to this briquetter as "Briquetter 1."

The events relevant to this dispute began in February 2017. In that month, Arrow entered into an agreement under which it would lease a briquetter from AVT, using a finance lease. The court refers to this briquetter as "Briquetter 2." As is normally the case with a finance lease, Arrow selected the briquetter it desired and instructed AVT to purchase it. AVT was instructed to purchase the briquetter from a vendor, and now defendant in this case, A-Plus Businesses, Inc. ("A-Plus").

---

[1] The court recites the facts in this section according to the Plaintiffs' allegations in the complaint, in the light most favorable to the Plaintiffs. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)) ("At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.").

[2] While the complaint alleges only that Arrow financed the machine through "another bank," the parties apparently agree in their briefing that it was Opus Bank.

On February 21, 2017, A-Plus sent AVT an invoice for a RUF 90/2500/150 Briquetting Machine (Briquetter 2).

Upon receiving the invoice, AVT requested verification from A-Plus that A-Plus held rights to Briquetter 2, apparently to ensure that A-Plus could legally convey it to AVT. In response to this request, A-Plus sent an invoice purporting to be from RUF, the original manufacturer of Briquetter 2, selling it to A-Plus. In addition, A-Plus sent AVT a copy of a bank statement showing a wire transfer from A-Plus to RUF—payment for Briquetter 2. AVT alleges that this invoice was forged, and that in fact A-Plus had no rights or interests in Briquetter 2. Further, AVT alleges that the wire transfer was a sham transaction—A-Plus, the vendor, never actually purchased Briquetter 2 from RUF, the manufacturer. Finally, in addition to the forged invoice and the sham wire transfer, AVT alleges that Murray, at the time President of Arrow, induced RUF to create a letter that falsely stated that AVT had paid in full for Briquetter 2, and that either Murray or Steve Peake, president of A-Plus, forged the signature on the letter.

AVT alleges that the description on the allegedly-forged Briquetter 2 invoice matched that of Briquetter 1, the one that Arrow had previously purchased directly from RUF and financed through Opus Bank. So AVT requested information from Arrow about Briquetter 1. In response, Murray told AVT that Briquetter 1 was a different machine from Briquetter 2. To support his claim, Murray sent AVT another RUF invoice, this one purporting to be for Briquetter 1. AVT alleges, however, that this invoice was also a forgery, averring that the invoice number, serial number, and purchase order number contained therein were falsified. This was done, according to AVT, to create the false impression that Briquetter 1 and Briquetter 2 were separate machines. In reality, according to AVT, Briquetter 2 did not exist—Defendants invented it to induce AVT to pay A-Plus over $459,000, proceeds which A-Plus divvied up among itself and its alleged co-conspirators.

3

In sum, AVT alleges that Briquetter 2 never really existed. Rather, Murray, Arrow, A-Plus and the other defendants essentially used documents from the purchase of Briquetter 1 as blueprints to construct a fraudulent transaction for Briquetter 2. Arrow never actually intended to buy a second briquetter; rather, Arrow and A-Plus deceived AVT into believing that Arrow did to induce payment. And when, during the due diligence process for the Briquetter 2 transaction, AVT attempted to determine the identity of Briquetter 1, Defendants, including Murray, forged Briquetter 1 documents to make the two briquetters appear to be different when, in reality, only Briquetter 1 existed.

Finally, AVT alleges that Arrow has not made its payments under the lease agreement and that the guarantors of the lease have failed to honor their obligations as guarantors. Because there is allegedly no Briquetter 2 for AVT to repossess, AVT alleges that it has suffered at least $454,267 in damages.

As a result of these events, AVT filed suit. It brings numerous claims against the Defendants, including four against Brian Murray: 1) fraud, 2) negligent misrepresentation, 3) entering into a civil conspiracy to defraud, and 4) unjust enrichment. Murray brought this motion to dismiss the claims against him. He argues that the claims should be dismissed 1) under Rule 12(b)(2) because this court lacks personal jurisdiction over Murray; 2) under Rule 12(b)(6) because AVT has failed to allege facts sufficient to pierce the corporate veil of Arrow and has therefore failed to allege facts sufficient to state a claim against Murray; and 3) under Rule 19(a) because AVT has failed to join a necessary party that cannot be joined. For the reasons below, the court grants in part and denies in part Murray's motion to dismiss.

## EVIDENTIARY OBJECTIONS

Before considering the motion to dismiss, the court addresses evidentiary objections raised by Murray in his Reply brief. Murray argues that under Rule 12(d), the court may not consider exhibits A, B, C, E, F, G, H, or I of AVT's Response in deciding the 12(b)(6) motion to dismiss without treating it as a motion for summary judgment. This is because, Murray claims, the exhibits are either inauthentic, irrelevant, or hearsay. The court overrules the objection as moot—the court did not consider any of the exhibits in deciding whether defendant has stated a claim under Rule 12(b)(6). Rather, it relied only on the well-pleaded facts of AVT's complaint. Thus, it is unnecessary to decide the admissibility of the challenged exhibits for the purpose of deciding the 12(b)(6) motion.

The court may, however, in addition to the allegations in the complaint, rely on affidavits and exhibits in reaching its decision on personal jurisdiction. Exhibits B, D, and I are the only exhibits that support a finding of personal jurisdiction. These are the exhibits that, as explained in Section III, show that Murray knew that AVT was located in Utah and that the harms of his alleged actions would be felt there. Of these exhibits, Murray objects only to exhibits B and I.

Murray objects to exhibit B on the grounds that it is irrelevant. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. This is a low bar, and exhibit B, Greg Emery's affidavit, clears it easily. Emery alleges that Murray exchanged numerous emails with AVT employees, which makes more probable the fact that he knew the effects of his conduct would be felt in Utah. This is of consequence in determining whether this court may properly exercise personal jurisdiction over Murray. Murray's objection to Exhibit B is therefore overruled.

Murray objects to exhibit I as irrelevant and inauthentic. Exhibit I, the lease agreement signed by Murray, is relevant to the issue of personal jurisdiction in exactly the same way that Exhibit B is. And as for authenticity, at this stage, where AVT claims that the document is authentic and Murray claims that it is not, the court must accept as true AVT's claim that it is. Thus, the court overrules plaintiff's objections to exhibit I. It will therefore consider exhibits B, D, and I in deciding whether to exercise personal jurisdiction.

## DISCUSSION

### I.   PERSONAL JURISDICTION

Murray argues that he is not subject to this court's personal jurisdiction because his contacts with the forum are insufficient. Specifically, he argues that he had no knowledge that AVT was located in Utah at the time he participated in the allegedly fraudulent conduct against it. Murray has thus moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(2). For the reasons below, the court concludes that it can properly exercise personal jurisdiction over Murray.

A.  Additional facts relevant to personal jurisdiction

Murray is a citizen of California with no apparent ties to Utah, other than his interactions with AVT. AVT's offices are located in Utah. AVT, in its argument supporting personal jurisdiction, alleges that Murray communicated on numerous occasions with employees of AVT through email, and that these emails contained AVT's Utah address in the signature block. In addition, AVT alleges that Murray signed the Master Lease Agreement between Arrow and AVT, which likewise

contained AVT's address on its first page.[3] Based on these facts, AVT concludes that Murray knew AVT was based in Utah and that he therefore targeted his fraudulent activity at Utah.

B.   Burden of Proof/ Legal Standard

As the plaintiff, AVT bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.* For the purpose of determining whether AVT has made its *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Id.*

To determine whether it has personal jurisdiction over Murray, the court first evaluates whether exercising personal jurisdiction satisfies Utah's long-arm statute, and second, whether exercising personal jurisdiction comports with principles of constitutional due process. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). Therefore, the court need only address whether the exercise of personal jurisdiction over defendants comports with due process demands.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*

---

[3] AVT has submitted a copy of one such email and of the Master Lease Agreement as Exhibits D and I, respectively.

*v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, AVT argues only that Murray is subject to specific personal jurisdiction.

### C.  Specific Jurisdiction

Specific jurisdiction is a two-step inquiry. The court must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

#### 1)  Minimum Contacts

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).

##### a)  Purposeful Direction

For tort-based claims, purposeful direction may be established "when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 907 (citing *Calder v Jones*, 465 U.S. 783, 790–91 (1984). The Tenth Circuit has articulated a 'harmful effects' test that is satisfied when three elements are met: "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge

8

that the brunt of the injury would be felt in the forum state." *Id.* (quoting *Dudnikov*, 514 F.3d at 1072).

This test emerged from the Tenth Circuit's interpretation of the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the plaintiff, Shirley Jones, brought a libel action in California state court against the editors of a magazine who were citizens of Florida. The Supreme Court held that the defendants had minimum contacts with California such that California courts could properly exercise personal jurisdiction over the defendants. It reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the effects of their Florida conduct in California.

*Id.* at 788–89 (citations and internal quotation marks omitted). The Tenth Circuit, interpreting *Calder*, found that jurisdiction was proper in Colorado where out-of-state defendants had sent a letter to eBay at its California headquarters intended to stop the sale of the Colorado plaintiffs' goods. *Dudnikov*, 514 F.3d at 1067. Even though the defendants had sent the letter outside of the forum, they knew that the plaintiffs were based in Colorado and that the brunt of the injury would be felt in Colorado. *Id.* at 1075–76, 78.

It should be noted that the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In *Walden*, the defendant, A Georgia police officer, wrongfully seized money from a Nevada couple at a Georgia airport. *Id.* at 280–81. At issue was whether a Nevada court could

9

exercise jurisdiction over claims against the defendant for false statements he made in his probable cause affidavit, which he submitted to the U.S. Attorney's office in Georgia. *Id.* at 280–81, 282. The Supreme Court held that, on these facts, jurisdiction was improper—it was not enough that the defendant knew that plaintiffs were Nevada citizens when he submitted the affidavit. His only contacts with Nevada were the plaintiffs, and "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the state, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475). Thus, defendant's "suit-related conduct" did not create a "substantial connection" with the forum state." *Id.* at 284.

With this precedent in mind, the court applies the three-part "harmful effects" test articulated by the Tenth Circuit in *Dudnikov* and *Old Republic* to determine whether Murray purposefully directed his activities at the forum. For the reasons to follow, the court finds that he did.

i)      Intentional act

Plaintiff has met its burden as to the first factor. AVT has alleged that Murray performed several intentional acts, including forging the RUF invoice, sending AVT a falsified RUF invoice, and falsely representing that there was a second briquetter. This suffices to show intentional action on the part of Murray.

ii)      Express aiming

Plaintiff has also satisfied the second factor. AVT argues that Murray expressly aimed his conduct at the forum because he aimed his conduct at AVT, knowing that it was located in Utah. AVT alleges that Murray signed the Master Lease Agreement, which contained AVT's Utah

address on the first page, and that he exchanged numerous emails with AVT employees, whose signature blocks also contained AVT's Utah address. AVT has attached Greg Emery's affidavit to support its argument. *See* ECF No. 28-2. But Murray claims that he did not know that AVT was located in Utah and that he therefore could not have expressly aimed his conduct at the forum. See ECF No. 21-1.

For the purpose of determining whether AVT has made a *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Shrader*, 633 F.3d at 1239. Accepting as true the facts contained in Emery's affidavit and the attachments referenced therein, the court finds that Murray knew he was aiming his tortious conduct at the forum. Because AVT's Utah address was both in the lease agreement and the numerous emails between Murray and AVT, Murray was on notice that AVT was located in Utah. And despite his affidavit, Murray appears to concede in his Reply brief that AVT successfully met its burden of showing express aiming: "[A]bout the most AVT can show is that Brian [Murray] knew it was based in Utah while engaging in allegedly tortious conduct *in the State of California*. In other words, about all AVT can show is 'express aiming.'"[4] ECF No. 29 at 8. For these reasons, the court concludes that AVT has satisfied its burden as to the second factor.

iii)   Brunt of the injury felt in the forum

Because Murray likely knew that AVT was located in Utah, the court also finds that he knew that the "brunt of the injury would be felt in the forum state." *Old Republic*, 877 F.3d at 907. Accepting AVT's allegations as true, Murray knew that AVT would feel the harmful effects of his allegedly fraudulent activity in Utah. Indeed, while Arrow and its facilities were located in

---

[4] As elaborated below, Murray argues that "[this] alone is not enough." ECF No. 29 at 8.

California, the financial ramifications of the fraudulent transaction would be felt in Utah, where AVT is based. *See Vivint, Inc. v. Alert Holdings Grp, Inc.*, No. 2:19-CV-215, 2019 WL 5637591, at *3 (D. Utah Oct. 31, 2019) (citing *Dudnikov*, 514 F.3d at 1077) ("[H]arm to a business . . . permeates to, and is most strongly felt at, the location where a business is based.").

But Murray maintains that even if it can be shown that he knew that AVT was based in Utah, the facts of this case do not support personal jurisdiction. He argues that his suit-related contacts with the forum do not create the "substantial connection" required under *Walden*. Further, Murray argues that AVT is his only link to the forum and that, under *Walden*, if the plaintiff is the defendant's only link to the forum, personal jurisdiction is improper.

The facts of this case fall much closer to the facts of *Calder* and *Dudnikov* than they do to the facts of *Walden*, however.[5] Unlike in *Walden*, where the Georgia defendant's only interaction with the Nevada plaintiffs occurred in Georgia, in this case, Murray reached out via email to AVT at its location within the forum. The *Dudnikov* court found personal jurisdiction proper on similar facts with arguably even more attenuated connection to the forum than the one here (a letter sent to California aimed to harm plaintiffs' business in Colorado). While Murray's contacts with the forum may have been significantly linked to his interactions with AVT, the *Walden* court acknowledged that "a defendant's contacts with the forum State may be intertwined with

---

[5] At oral argument, counsel for Murray asserted that the Supreme Court's decision in *Walden* changed the law regarding personal jurisdiction to require more than "express aiming." The court disagrees with this assessment. First, the approach in *Calder* did not require only "express aiming." Rather, as interpreted by the Tenth Circuit, *Calder* requires that the defendant's actions satisfy the three-part "harmful-effects" test articulated above. Second, the *Walden* court did not purport to overrule *Calder*; in fact, it explicitly applies the principles established in *Calder. See Walden*, 571 U.S. at 288. Finally, the Tenth Circuit has reaffirmed the *Calder* harmful-effects test even after *Walden. See Old Republic*, 877 F.3d at 907–08.

his transactions or interactions with the plaintiff . . ." *Walden*, 571 U.S. at 286. *See also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum."). The court therefore finds that AVT has satisfied its *prima facie* burden showing that Murray purposefully directed his activities at the forum.

  b)  Arising out of

The second consideration in the minimum contacts analysis is whether the defendant's contacts with the forum state give rise to the plaintiff's claim. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (citation and alterations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Some circuits have held that there must be a "but-for" link between the defendant's contacts with the forum and the plaintiff's claims. *See Mattel, Inc. v. Greiner & Hausser GmbH.*, 354 F.3d 857, 864 (9th Cir. 2003). Other circuits have required a more restrictive proximate cause test. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998). The Tenth Circuit has yet to choose between the but-for and proximate cause approaches taken by its sister circuits. *See Dudnikov*, 514 F.3d at 1079 ("As between the remaining but-for and proximate causation tests, we have no need to pick sides today."); *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013) ("We have so far refused to choose one test over the other, and we still need not pick between the two to resolve this case."). This court likewise need not choose between the two approaches because the more restrictive analysis is satisfied.

13

Under the proximate-cause approach, courts must "examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Newsome*, 722 F.3d at 1270 (citation omitted). Here, AVT alleges that its injury, more than $450,000 in losses, resulted from Murray's (and the other defendants') misrepresentations. These misrepresentations were among Murray's contacts with the forum. Accepting AVT's allegations as true, the misrepresentations are relevant to the merits of AVT's claims against him. The court therefore concludes that AVT's injuries arose out of Murray's forum-directed conduct.

2)      Fair Play and Substantial Justice

When a party has the requisite minimum contacts with the forum state, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (citation omitted). Whether jurisdiction "is so unreasonable as to violate 'fair play and substantial justice'" depends on five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Newsome, 722 F.3d at 1271*.

Here, Murray did not point to any of these factors in his Motion to Dismiss. The court therefore finds that he has not met his burden to show that the court's exercise of jurisdiction over him in this case would be unfair or unreasonable. [6]

---

[6] While the court has focused in this section on the tort claims against Murray, it concludes, for similar reasons, that it may also exercise jurisdiction over the civil conspiracy claim against him. This is because a court may exercise personal jurisdiction over a civil conspiracy claim where the conspiracy was targeted at the forum. *See Newsome v. Gallacher*, 722 F.3d 1257, 1265–66 (10th Cir. 2013) (affirming exercise of personal jurisdiction where the conspiracy "[took] place entirely

## II.   PIERCING THE CORPORATE VEIL

Murray argues AVT has failed to state a claim against him because he cannot be held liable for the acts of Arrow unless the corporate veil is pierced, and he argues that AVT has failed to plead sufficient facts to support a piercing of the corporate veil. AVT responds that it has alleged that Murray was personally involved in the wrongful activity at the heart of this dispute; it is therefore not necessary to pierce the corporate veil in order to find him liable.

### A.   Legal Standard

When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.   Choice-of-law

Plaintiff does not address, either in its Complaint or in its Response brief, which state's laws govern this dispute. Under its Third Cause of Action, Plaintiff appears to assume, without explanation or argument, that Utah law applies. But Defendant argues that California law applies to determine whether the corporate veil may be pierced. This is because, Defendant argues, the "internal affairs doctrine" applies. Under this doctrine, when the internal affairs of a defendant

---

outside of the forum, but with the conspirators' knowledge that the forum would bear the brunt of the conspiracy's harmful effect."). The court need not consider whether it has personal jurisdiction over the unjust enrichment claim because it concludes, as explained it the next section, that AVT has failed to state a claim for unjust enrichment against Murray.

corporation are at issue, the law of the state where the defendant is incorporated applies. The internal affairs of a corporation "are limited only to 'matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.'" *Earthgrains Baking Companies, Inc. v. Sycamore Family Bakery, Inc.*, 2015 WL 5009376 (D. Utah 2015) (quoting *Wasatch Oil & Gas, LLC v. Edward A. Reott*, 263 P. 3d 391, 393 (Utah. Ct. App. 2011)).

Defendant cites only one authority in support of applying the internal affairs doctrine, a Delaware Supreme Court case in which the court used the internal affairs doctrine in choosing which forum's law to apply. *See Sagarra Inversiones, S.L. v Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1081–82 (Del. 2011). It should be noted that this court applies Utah, not Delaware, law, including its choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Fortuitously, Utah courts also follow the internal affairs doctrine. *See Wasatch Oil & Gas*, 263 P.3d at 393. Therefore, where the internal affairs of Arrow are in question, including whether to pierce the corporate veil, California law governs.

The majority of AVT's claims against Murray, however, do not bring the internal affairs of Arrow into question. This is because, in three of the four claims it brings against Murray, AVT does not allege that Murray is vicariously liable for Arrow's acts. Rather, AVT alleges that Murray is primarily liable for his own wrongful acts—fraud, negligent misrepresentation, and entering into a conspiracy to defraud. As to these claims, the parties have not argued which state's law should apply. However, as explained in the following section, the laws of the only two plausible states whose laws might govern this dispute, California and Utah, are in substantial agreement.[7]

---

[7] In the future, the parties are advised to consider which state's law should govern matters in this case. That the contract between the parties specifies one state's laws does not mean that that state's laws will govern all issues in this dispute. As previously stated, this court, sitting in diversity,

C.      The Corporate Veil Does Not Shield Individuals from Liability for Their Own

Wrongful Activity

The corporate veil doctrine shields corporate directors and shareholders from vicarious liability for the acts of their corporations. It exists to protect the "fundamental" principle "that a corporation is a legal entity that is distinct from its shareholders." *Grosset v Wenaas*, 175 P.3d 1184 (Cal. 2008). To pierce the corporate veil and impose liability on a corporate officer, a court must find that he is the alter ego of the corporation. This requires "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Automotriz del Golfo de California S.A. de C.V. v. Resnick*, 306 P.2d 1, 3 (Cal. 1957).[8]

The corporate veil doctrine notwithstanding, California and Utah courts agree that corporate officers may be liable for wrongful activity in which they personally participate. *See Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41 (Utah Ct. App. 2003) (stating that a corporate officer "can be held liable for fraudulent acts that she personally committed or in which she participated . . ."); *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 524 (Utah Ct. App. 2006) ("[a]n agent of a corporation may be personally as responsible as the corporation itself for tortious acts when participating in the wrongdoing" (quoting *L.C.L. Theatres, Inc. v. Columbia Pictures Indus., Inc.*,

---

applies Utah choice of law rules. Utah follows the Restatement (Second) of Conflict of Laws. *See, e.g.*, *Forsman v. Forsman*, 779 P.2d 218, 219–20 (Utah 1989); *Records v. Briggs*, 887 P.2d 864, 867 (Utah Ct. App. 1994).

[8] Defendant, in his Motion, articulates the wrong test for piercing the corporate veil. He states that courts will pierce the corporate veil only when the corporate form is used to perpetrate the wrongful activity. *See* ECF No. 21 at 5. While this is true, he ignores the other requirements for piercing the corporate veil, stated above.

619 F.2d 455, 457 (5th Cir. 1980))); *Frances T. v. Village Green Owners Assn.*, 723 P.2d 573, 580 (Cal 1986) ("Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct." (citations omitted)). In cases where the plaintiff alleges that the defendant is primarily liable due to his or her own participation in wrongful activity, "it is not necessary that the corporate veil be pierced or even discussed." *d'Elia*, 147 P.3d at 524 (quoting *L.C.L. Theaters*, 619 F.2d at 457). This is true "even though [the defendant's] action in such respect may be in furtherance of the corporate business." *Harrison*, 70 P.3d at 41 (citation omitted).

D.  Murray May Be Liable for the Wrongful Acts in Which He Personally Participated

Here, AVT has asserted four causes of action against Murray: fraud, negligent misrepresentation, entering into a civil conspiracy to defraud, and unjust enrichment. Under the first three, AVT has alleged that Murray personally participated in the wrongful acts. Murray, in his Reply brief, argues that "AVT has failed to plead non-conclusory facts showing that Brian participated in, or even knew about, Arrow's tortious conduct such that he could be held jointly liable with Arrow." ECF No. 29 at 5. This is wrong. AVT in fact alleges that Murray requested the allegedly fraudulent invoices, and that he knew that the representations therein were false. *See* ECF No. 2 ¶ 60–69. AVT also alleges that Murray knowingly and falsely represented that Briquetter 1 and Briquetter 2 were two separate machines (by forging a serial number for and documents related to Briquetter 1). *Id.* at ¶ 70, 73. AVT likewise alleges that Murray failed to use reasonable care to determine whether these allegedly false representations were true. *Id* at ¶ 86. AVT also alleges that Murray was personally involved in a civil conspiracy with the other defendants to defraud AVT. *Id.* at ¶93–98. Murray argues that it would be improper to find that a

18

corporate officer entered into a conspiracy with his own corporation. However, AVT alleges that Murray entered into a conspiracy not just with Arrow, but also with P. Kunnel, D. Kunnel, A-Plus, and Peake. Accepting these allegations as true and in the light most favorable to the Plaintiff, this court finds that AVT has stated plausible claims for relief against Murray.

As to the fourth cause of action, unjust enrichment, it is unclear from the allegations in the complaint whether Murray personally received a benefit from AVT, or whether he received it by virtue of his position as a shareholder of Arrow. Given the quasi-contractual nature of unjust enrichment claims, and the fact that AVT's lease agreement was with Arrow, not Murray, the court concludes that it is proper to interpret AVT's allegations in the latter manner, i.e., that Murray received the benefit through his role as a shareholder of Arrow. This conclusion is supported by the fact that AVT, in its Response brief, argued that its first three causes of action against Murray were for his personal acts, but was silent as to its unjust enrichment claim. *See* ECF No. 28 at 7. It would therefore be necessary to pierce the corporate veil in order to adjudicate this claim. Because AVT has failed to allege any facts that would indicate that Murray was Arrow's alter ego, the court finds that AVT has failed to state a plausible claim for unjust enrichment against Murray.

## III.   FAILURE TO NAME A NECESSARY PARTY

Finally, Murray argues that the claims against him must be dismissed under Federal Rule of Civil Procedure 19(a) because AVT has failed to name an indispensable party, Opus Bank. Opus Bank is the apparent owner or senior secured creditor of the actual briquetter in Arrow's possession, Briquetter 1. Murray argues that Opus Bank is a required party to this action because in adjudicating the fraud claims, this court will have to determine who holds title to the briquetter at Arrow's facility. Additionally, because AVT has brought a foreclosure action against Arrow, Murray argues that Opus Bank, as another creditor of Arrow, is a required party. Murray argues

that because this court lacks personal jurisdiction over Opus Bank, it cannot be joined as a party and this action must therefore be dismissed.

AVT responds that Opus is not a necessary party because the title of the briquetter is not in dispute—the resolution of AVT's claims against Murray do not require the court to determine who holds title to the briquetter. Concerning the foreclosure actions, AVT argues that "[t]here cannot be a question as to who has an interest in the briquetter. Opus Bank is the owner, or at a minimum, the senior secured creditor." ECF No. 28 at 17. The court agrees with AVT.

The Federal Rules of Civil Procedure provide that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). The Rules further state that even if a party is necessary, if its joinder is not feasible, then

> the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* 19(b).

On the facts of this case, the court concludes that Opus Bank is not indispensable to adjudicating the fraud claim against Murray and others.[9] Even if this court addresses the question of title to the briquetter, the court's decision would have no impact on Opus Bank's rights to it. This is because the fraud claim essentially boils down to whether there was one briquetter or two. If the eventual trier of fact finds that there was only one briquetter, AVT has already conceded that Opus has a superior claim to any rights in that briquetter. If, on the other hand, it turns out that there are really two briquetters and AVT's allegations of fraud are false, then AVT would have title only to Briquetter 2, the one it leased to Arrow, and Opus would retain title to Briquetter 1, the one it financed. In short, an adjudication of the fraud claims in this case would not impair or impede Opus Bank's rights to protect its interests in the briquetter it financed.

The court reaches a similar conclusion as to AVT's foreclosure claim against Arrow. AVT admits that Opus Bank is either the owner of the briquetter or a senior creditor. If it is the owner, then the briquetter would not be among Arrow's assets; it would belong to Opus Bank. If it is a senior creditor, then its interests would not be affected by a junior creditor's foreclosure action because any interest it has would remain attached to the property. *See, e.g., Nature's Sunshine Prod., Inc. v. Watson,* 174 P.3d 647, 649 (Utah Ct. App. 2007) (explaining that a buyer at a foreclosure sale purchased the property subject to the interests of any senior lienholder). Thus, even if AVT were to successfully foreclose upon and take possession of Arrow's assets, it would take those assets, potentially including Briquetter 1, subject to the interests of any senior creditors,

---

[9] Unfortunately, Murray has not pointed the court toward a single case to support its contention that Opus Bank is a required party.

21

which here would include Opus Bank, according to AVT's own admission. Because Opus Bank's interests would not be impaired by a judgment by this court, it is not a necessary party.

## CONCLUSION AND ORDER

The court orders as follows:

1. Murray's motion to dismiss AVT's claims under Rule 12(b)(2) for lack of personal jurisdiction is DENIED.

2. Murray's motion to dismiss AVT's unjust enrichment claim against him under Rule 12(b)(6) is GRANTED. The claim is dismissed without prejudice. Murray's motion to dismiss AVT's claims of fraud, negligent misrepresentation, and civil conspiracy under Rule 12(b)(6) is DENIED.

3. Murray's motion to dismiss AVT's claims under Rule 19(a) for failing to name an indispensable party is DENIED.

DATED September 18, 2020.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22